**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

KIMBERLY OSORIO and MICHELLE JOYCE,⠀⠀⠀:

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀:

⠀⠀⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀:

SOURCE ENTERPRISES, INC.,⠀⠀⠀⠀⠀:
SOURCE ENTERTAINMENT, INC.,⠀⠀⠀:
DAVID MAYS in his official and individual⠀:
capacities, and RAYMOND SCOTT, also known⠀:
as "BENZINO," in his official and individual⠀:
capacities,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
⠀⠀⠀⠀⠀⠀⠀⠀Defendants.⠀⠀⠀:
------------------------------------------------------------X

05 Civ. 10029 (JSR)(JCF)

**AMENDED COMPLAINT**

**Jury Trial**
**Demanded**

RECEIVED
MAR 3 1 2006
U.S.D.C. S.D. N.Y.
CASHIERS

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

⠀⠀⠀⠀Plaintiffs Kimberly Osorio ("Ms. Osorio") and Michelle Joyce ("Ms. Joyce")

(together, "Plaintiffs"), by and through their undersigned counsel, as and for their

Amended Complaint in this action against Defendants Source Enterprises, Inc., Source

Entertainment, Inc. ("The Source" or the "Company"), David Mays and Raymond Scott,

also known as "Benzino," (collectively, "Defendants"), hereby allege as follows:

## NATURE OF THE CLAIMS

⠀⠀⠀⠀1.⠀⠀⠀⠀This is an action for declaratory, injunctive and equitable relief, as well as

monetary damages, to redress Defendants' unlawful employment practices and retaliation

against Plaintiffs, including Defendants' discriminatory treatment, harassment and

unlawful retaliation against Plaintiffs, and the wrongful termination of their employment,

due to their Gender and their complaints of discrimination on behalf of themselves and

other female employees at The Source, in violation of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the New York State Human

Rights Law, New York Executive Law  §§ 290 et seq., and the New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq., and for Defendants The Source's and Scott's defamation of Plaintiff Kimberly Osorio.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiffs' rights under Title VII.  The Court has supplemental jurisdiction over Plaintiffs' related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

4.     Plaintiff Kimberly Osorio, the former Editor-in-Chief of The Source magazine, is a resident of the State of New Jersey, Bergen County.  At all relevant times, she met the definition of an "employee" under all applicable statutes.

5.     Plaintiff Michelle Joyce, the former Vice President of Marketing at The Source, is a resident of the State of New Jersey, Hudson County.  At all relevant times, she met the definition of an "employee" under all applicable statutes.

6.     Defendant Source Enterprises, Inc. is a Delaware corporation that publishes The Source magazine, the self-proclaimed "Bible of Hip Hop."

7.     Defendant Source Entertainment, Inc. is a Delaware corporation that focuses on brand and non-magazine related business ventures, such as television awards shows, clothing, mobile telephones, compilation compact discs and other products relating to rap music and hip-hop culture.

8.      During the relevant time period, Defendant The Source had its principal place of business located at 215 Park Avenue South and/or 28 West 23rd Street, New York, New York and regularly transacts business in this district.

9.      At all relevant times, Defendants Source Enterprises, Inc. and Source Entertainment, Inc. have met the definition of an "employer" under all applicable statutes.

10.      At all relevant times, Defendants Source Enterprises, Inc. and Source Entertainment, Inc. were operated as a single, integrated enterprise, or single employer, or as joint employers.

11.      Further, Defendants Source Enterprises, Inc. and Source Entertainment, Inc. also shared common ownership, common premises, common directors and/or officers, and common financial control, principally through Defendants Mays and Scott.

12.      Moreover, they shared common management and control over labor relations and personnel policies and practices, including the hiring and firing of employees.  By way of example only, Defendants Source Enterprises, Inc. and Source Entertainment, Inc. shared a single Human Resources Department.

13.      One employee, Julie Als, was responsible for managing all of the human resources functions for Defendants Source Enterprises, Inc. and Source Entertainment, Inc.

14.      Upon information and belief, Defendants Source Enterprises, Inc. and Source Entertainment, Inc. co-mingled funds and other capital assets.

15.     Defendants Source Enterprises, Inc. and Source Entertainment, Inc. were also operationally interrelated and interdependent upon one another.  By way of example only, senior management of these purportedly separate organizations would address issues related to both Defendants Source Enterprises, Inc. and Source Entertainment, Inc. at the same meetings without any differentiation between these organizations.

16.     At all relevant times, Defendant David Mays was the co-founder, co-owner and Chief Executive Officer of The Source and, upon information and belief, is a resident of the State of New Jersey, Bergen County.  Defendant Mays participated directly in the unlawful discrimination, harassment and retaliation committed against Plaintiffs and in the employment decisions and actions taken against them.

17.     At all relevant times, Defendant Raymond Scott, also known as "Benzino," was the Chief Brand Executive of The Source and purported co-owner of Company, upon information and belief, is a resident of the State of New Jersey, Bergen County.  Despite his public claims that he was a co-owner of the Company, Defendant Scott held no ownership interest in the Company.  As stated in the April 2006 issue of The Source, "Benzino was *never* an owner of the magazine.  He was never more than Mays's overly compensated homeboy."  Defendant Scott participated directly in the unlawful discrimination, harassment and retaliation committed against Plaintiffs and in the employment decisions and actions taken against them.

18.     In addition, Defendants Mays and Scott were terminated by the Board of Directors of the Company on or about January 18, 2006 for cause.  Upon information and belief, Defendants Mays and Scott were terminated for their mismanagement of the Company, including for engaging in financial mismanagement and gender

4

discrimination, sexual harassment and retaliation against Plaintiffs and other female employees.

19.     Plaintiffs have complied with all statutory prerequisites to their Title VII claims, having filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 11, 2005, and having requested and received notice of their right to sue from the EEOC on or about November 10, 2005, which is more than 180 days after the charges were filed with the EEOC.  This action was originally filed within 90 days of receipt of Plaintiffs' EEOC right to sue letters.

20.     Prior to the commencement of this action, a copy of the original Complaint was served on both the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

21.     Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

### Kimberly Osorio's Employment at The Source

22.     Kimberly Osorio began working at The Source as a freelance writer in or about May 1998 and later became an Associate Music Editor at the Company in January 2000.  Prior to joining The Source, Ms. Osorio graduated from Fordham University and later earned a law degree.

23.     Due to her outstanding work performance at The Source, Ms. Osorio quickly rose through the editorial ranks at the Company.  More specifically, after serving as the most senior editor for several months, during the Summer of 2002, Ms. Osorio became the first female Editor-in-Chief of The Source in October 2002, which generated

significant press coverage in the rap music industry and the mainstream media. Ms. Osorio served as Editor-in-Chief until March 8, 2005, when she was unlawfully terminated by Defendants.

24.     As Editor-in-Chief, Ms. Osorio managed a staff of over 25 employees, including freelance writers and all of the editors at The Source. The monthly sales of the magazine also steadily increased for the first six or seven months under her leadership.

25.     In fact, the April 2006 issue of The Source magazine acknowledges that "The Source dominated the Hip-Hop magazine marketplace, and continued to dominate under Osorio's reign. In fact, the September 2002 issue of The Source can be considered one of the crowning achievements of that era . . ."

26.     However, when The Source began a highly-publicized campaign against rapper Eminem at the sole direction of Defendant Scott, The Source magazine's reputation became seriously damaged and its sales and advertising revenues steadily declined.

**Michelle Joyce's Employment at The Source**

27.     Michelle Joyce began working for The Source as a Marketing Consultant in September 2003 and became Vice President of Marketing in November 2003. Before joining The Source, Ms. Joyce attended New York University and also served as Vice President of Marketing at MCA Records and Epic Records.

28.     As Vice President of Marketing at The Source, Ms. Joyce was responsible for developing the marketing strategy for all branded properties of the Company, including the magazine, clothing line, and The Source Awards, which is a rap music awards ceremony televised each year to millions of viewers.

29.     During her employment at The Source, Ms. Joyce reported directly to

Defendant Mays, and her work performance was exceptional.  For example, Defendant

Mays told Ms. Joyce that she did an excellent job organizing and marketing The Source

Awards in October 2004, which was held in Miami and attended by some of the most

prominent recording artists and music producers in rap music.  A related event, The

Source Awards Weekend, which is reportedly the largest annual live gathering of hip hop

music fans, attracted over 75,000 people to Miami.

30.     Additionally, as Vice President of Marketing, Ms. Joyce managed four

employees and one intern, including two male staff members, Jermaine Woods,

a Promotions Manager, and Ousmane Sam, who was a Marketing Coordinator.

**The Relationship Between Defendants Scott and Mays**

31.     By way of background, Defendant Scott is a rapper from Boston who had

taken virtually complete control of The Source from Defendant Mays and used it in an

attempt to advance his own rap music career by demanding that The Source magazine

writers and editors devote unwarranted and flattering coverage of his records, CDs and/or

career in numerous issues of the publication.

32.     Defendant Scott often verbally abused Defendant Mays, shouted

profanities at Defendant Mays and threatened to violently attack him and others at The

Source.  When Defendant Scott subjected Defendant Mays to such threats and/or

humiliation, Defendant Mays simply remained silent or did whatever Defendant Scott

ordered, apparently out of fear of Defendant Scott and his associates.

**The Hostile Work Environment and Rampant Sexual Harassment at The Source**

33.     Throughout their employment at The Source, Plaintiffs and other women were subjected to a hostile work environment, which consisted of sexual harassment, including, unwelcome sexual advances, vulgar sexual comments, inappropriate touching, verbal abuse and/or threats of physical violence by, and/or tolerated and condoned by, Defendants Mays and Scott and other male executives and/or employees at the Company. As detailed below, Plaintiffs and other women were subjected to a continuing pattern and practice of sexual harassment.

34.     Indeed, the sexual harassment was so severe and pervasive that women at The Source, including several female executives, would often be forced to hide in their offices and avoid walking through the corridors out of fear of being sexually harassed verbally or physically by Defendants Scott and other male executives and/or employees of The Source.

**A.     Kimberly Osorio**

35.     While Ms. Osorio was employed at The Source, she was subjected to sexual harassment by Defendant Scott and several other male employees.  More specifically, Defendant Scott repeatedly sexually propositioned Ms. Osorio during the workday.

36.     On one occasion, Defendant Scott put enormous pressure on Ms. Osorio to spend a weekend with him in a hotel in Atlantic City.  Despite the fact that Ms. Osorio rejected his sexual advances, Defendant Scott called her repeatedly, more than 5 times, later that same day in an effort to get her to go away with him.  He also called Ms. Osorio

again many times the next day as well to continue his sexual advances towards her, knowing full well that she was his subordinate and objected to his conduct.

37.     Defendant Scott often badgered Ms. Osorio about whom she was dating and repeatedly bragged to her that he allegedly had sex with a number of high-profile and successful female rap artists, whom he would name.  He also attempted to pressure Ms. Osorio to talk about her own sex life by claiming that other women at The Source had engaged in sexual intercourse with him.

38.     Defendant Scott further stated that Defendant Mays, his business partner, also had sexual intercourse with well-known women in the rap music industry and, in an effort to get Ms. Osorio to discuss her sex life and/or accede to his sexual advances, boasted that "everyone sleeps around."  Ms. Osorio found his actions and statements completely offensive.

39.     Ms. Osorio witnessed many acts of sexual harassment committed against other women at The Source as well.  By way of example only, she observed Defendant Scott repeatedly subject a high-ranking female executive to some of the most offensive acts of sexual harassment, including, but not limited to, demanding lap dances from that executive.  Defendant Scott also constantly pressured Ms. Osorio to sexually proposition that woman for him.

40.     Ms. Osorio complained repeatedly about the sexual harassment that she and other women at The Source had suffered, all to no avail.

**B.     Michelle Joyce**

41.     Despite her senior-level position as Vice President of Marketing at The Source and outstanding work performance, Ms. Joyce was subjected to sexual harassment

9

during her employment at the Company, including by several of her male subordinates. More specifically, Alvin Childs, who is one of Defendant Scott's male associates and also known as "Wiz," would often stare at her body and once stated, in substance, "Damn you look good in those jeans," while he was walking behind her.

42. On another occasion, Mr. Childs saw Ms. Joyce sitting at her desk with a lollipop in her mouth and stated, in substance, "I'll give you something to suck on." This statement totally degraded Ms. Joyce as a woman and undermined her position and authority within the Company.

43. One day during the 2004 Christmas holiday season, Mr. Childs also heard that Ms. Joyce was looking for a candy cane in the office and told her, in substance, that he had one but had already given it to another female at The Source who had to "lick it until the white came out."

44. Ms. Joyce also repeatedly observed a high-ranking female executive hiding in the offices of other employees to avoid being sexually harassed by Defendant Scott. She also observed male employees constantly sexually harass two of her young female interns who worked in the Marketing Department. It was even rumored that Leroy Peeples, who is the General Manager at The Source and also known as "Bum," and Dale Johnson, the Executive Assistant to Defendant Mays, had placed a bet with each other as to which one would be the first person to have sex with a young intern at The Source.

45. Ms. Joyce also complained repeatedly about the sexual harassment that she and other women at The Source had suffered, all to no avail.

### C.   Additional Harassment Suffered by Plaintiffs and Other Female Employees

46.   In or about April 2004, Defendant Scott shared an elevator with a female employee who worked in the Accounting Department of The Source and learned for the first time that she was a staff member. Upon information and belief, Defendant Scott then immediately began a campaign of sexual harassment against that employee. By way of example only, as that employee was walking off the elevator that day, Defendant Scott repeatedly blurted out "You got a fat ass."

47.   About twenty minutes later, he called that employee at her desk and demanded that she go to lunch with him or come to his apartment. She rejected his sexual advances and explained to him that she was engaged to be married. Defendant Scott responded by saying that it did not matter that she was going to be married shortly.

48.   Thereafter, Defendant Scott called that female employee repeatedly throughout the day, often telling her "I like your butt" and pressuring her to come to his apartment. He also left harassing telephone voicemail messages, leaving his cellular telephone number and demanding that she call him. Although she never gave Defendant Scott her home telephone number, he even started calling that employee at home, sometimes as late as 10:00 p.m. at night.

49.   On some occasions, Defendant Scott even sent a secretary to search for that female employee and to see if she was at her desk so that he could sexually proposition her. As a result of Defendant Scott's constant sexual harassment, that female employee felt she could no longer answer the telephone at her desk, fearing it was Defendant Scott, her boss, seeking to pressure her for sex.

11

50.     In an effort to end the sexual harassment by Defendant Scott, that employee met with Julie Als, the Vice President of Human Resources and Operations, and complained about Defendant Scott's improper conduct.  Despite receiving specific complaints from that employee about Defendant Scott, Ms. Als failed to take any remedial action in response to those complaints.

51.     Because Defendant Scott continued to sexually harass that employee at work and at home, she ultimately was forced to resign from the Company.

52.     Upon information and belief, in 2005, another female employee was also subjected to sexual harassment during her employment at The Source.  More specifically, Dale Johnson, the Executive Assistant to Defendant Mays, repeatedly touched that employee inappropriately and sexually propositioned her.

53.     Upon further information and belief, Mr. Johnson would close that female employee's office door, walk behind her and attempt to massage her shoulders.  In response to Mr. Johnson's actions, that employee would tell him to "back up" and to "stop it."  Despite that employee's objections to his improper conduct, Mr. Johnson also grabbed and attempted to kiss and hug that employee in the workplace on several occasions.

54.     Upon information and belief, Mr. Peeples, the General Manager of The Source and a close personal friend of Defendant Scott from high school, also subjected that same employee and other women in the workplace to sexual harassment.

55.     On one occasion, Mr. Peeples attempted to massage that employee's shoulders but she objected to his conduct.  He also told her that the employees at The Source should engage in an orgy, which she found to be offensive and discriminatory.

56.     Upon further information and belief, on another occasion, that female employee once walked into Mr. Peeples' office and saw a young female employee on her knees in front of Mr. Peeples, apparently engaging in a sexual act.

57.     Additionally, Defendants Mays and Scott and other male executives and/or employees at The Source often berated and/or humiliated women at The Source on the basis of their Gender, but did not treat or talk to male employees who held comparable positions in the same manner.

58.     By way of example only, Defendant Mays would yell and curse at Ms. Osorio, and often ask her, "What the fuck is wrong with you?," whereas he would not treat or talk to similarly-situated male employees in such a manner.

59.     Defendant Mays engaged in similar mistreatment of Ms. Joyce, at whom he would also yell and curse.  He would also often ask Ms. Joyce whether she was "fucking stupid" or "some sort of asshole" or "what are you fucking doing," whereas he would not treat or talk to similarly-situated male employees in such a manner.

60.     Furthermore, Defendants Mays and Scott ignored threats of violence that one of Ms. Osorio's male subordinates had made against her.  More specifically, on December 3, 2002, Antoine Clark, who was the Executive Editor at The Source, shouted profanity at Ms. Osorio, degraded her as a woman, and repeatedly told her that "I would knock you upside your fuckin' head" when she asked him about a story he failed to submit.  Prior this incident, Mr. Clark had also reportedly gotten into verbal arguments with another female executive and Ms. Als that nearly turned violent.

61.     Out of concern for her physical well-being, Ms. Osorio filed a written complaint the very next day with Defendant Mays, Ms. Als and Jeremy Miller, who was

the Chief Operating Officer, regarding the physical threats Mr. Clark had made against her. Despite her formal complaint, Mr. Clark was neither terminated nor was any other disciplinary action ever taken against him for this conduct.

62.    A few months after Mr. Clark had threatened to violently assault Ms. Osorio, upon information and belief, he verbally attacked and degraded a female employee who was five months pregnant at the time. More specifically, Mr. Clark yelled at that employee in front of her colleagues and stated that she was "ugly" and that he felt sorry for the man who had gotten her pregnant.

63.    Later that same day, that female employee filed a formal written complaint at The Source against Mr. Clark, stating, "I was visibly upset and shaken by his tone and his aggressiveness. I've never felt so degraded in my professional life."

64.    Despite Mr. Clark's threats of violence toward and degradation of women at The Source, Defendants Mays and Scott failed to take any disciplinary action against him, which caused Ms. Osorio great concern since it was rumored that illegal guns were prevalent in the workplace, and there have been many threats of violence and/or violent altercations between employees at the Company.

65.    Upon information and belief, Defendants Mays' and Scott's failure to terminate or even discipline Mr. Clark was based on their discriminatory attitudes and conduct towards women at The Source.

66.    Upon further information and belief, most recently, David Blanks, the then newly appointed Editor-in-Chief of The Source magazine and also known as Dasun Allah and DX21, publicly humiliated a young female who worked at The Source by slamming an office door and shouting in the hallway in front of other employees that she was a

14

"bitch." Mr. Blanks used that derogatory term to denigrate that employee on the basis of her Gender.

67.     As part of the hostile work environment that women suffered, and continue to suffer, at The Source, male employees displayed inappropriate pictures openly in the workplace depicting women showing their breasts or wearing skimpy bathing suits known as "G-strings."

68.     Upon information and belief, Mr. Peeples, the General Manager of the Company, also had a large picture of a woman's naked vagina hanging on the wall of his office in plain view for others to see.  He also would watch pornographic rap music videos in the workplace with other male executives and/or employees at The Source.

69.     Despite the fact that Ms. Joyce and others complained about the derogatory images of women displayed in the workplace, which degraded women as mere sex objects for men, Defendants Mays and Scott and Ms. Als, the head of Human Resources, failed to take any remedial action regarding those images and allowed them to remain displayed for a significant period of time.

70.     The pervasive sexual harassment and hostile work environment that Plaintiffs and other women at The Source were subjected to unreasonably interfered with their work performance.

**D.     The Source's Pattern and Practice of Sexual Harassment, Discrimination and Retaliation Against Female Employees**

71.     The sexual harassment, hostile work environment, discrimination and retaliation suffered by Plaintiffs, and other women employed by The Source during their tenure, is a pattern and practice that female employees have endured for at least a decade. As the April 2006 issue of The Source magazine admits, Defendant Scott and his

15

associates "sometimes harassed and threatened staff members, who would bring concerns to [Defendant] Mays, only to be patronized and ridiculed."

72.     By way of example only, in 1997, Janene Outlaw, who was a Photography Editor for The Source, filed an EEOC charge alleging "continuous and repeated sexual harassment by male employees at the magazine, which created a hostile and abusive work environment."  Upon information and belief, Ms. Outlaw was mainly sexually harassed by Defendant Scott, subjected to "unwelcome sexual comments, unwelcome sexual advances, and unwelcome touching by a number of male employees."

73.     Ms. Outlaw also observed Defendant Mays and other male staff members make "comments about the appearance of women on the staff, including repeated comments about the 'size of the ass' of a female employee at the magazine."  Ms. Outlaw was also "told that she would receive job benefits in exchange for sexual favors."

74.     Upon further information and belief, after Ms. Outlaw complained, she was retaliated against, including by being "criticized without justification and for no legitimate business reason" and was "yelled at" and demeaned in public.  Ms. Outlaw was ultimately constructively discharged from her employment at The Source.

75.     Defendants Mays and Scott were therefore on notice for years that behavior of the type that Ms. Outlaw complained about was inappropriate and could constitute unlawful discrimination, harassment and retaliation.  Despite such notice, sexual harassment, gender discrimination and retaliation continued to be condoned and tolerated by Defendants Mays, Scott and The Source.

**The Gender Discrimination**

76.     As the real power behind The Source, Defendant Scott had placed many of his male associates from Boston on the payroll and given them key positions at The Source, despite their lack of publishing, writing, editorial or other relevant qualifications. These individuals include, but are not limited to, Messrs. Peeples and Johnson, Jermaine Woods, Ousmane Sam, and Alvin Childs.

77.     At The Source, male employees were consistently treated more favorably than female employees with respect to their terms and conditions of employment, including receiving preferential treatment concerning hiring and promotions, compensation and benefits, working hours and time off from work, and with respect to discipline.

78.     In fact, many of Defendant Scott's male associates at The Source performed virtually no meaningful work, came and went as they pleased and/or did not adhere to The Source's rules, procedures and/or policies that all female employees were required to follow.

79.     There were also sixteen other individuals, virtually all males, who were on the payroll of The Source at a cost of about $500,000 annually, but did not perform any services for the Company or even show up for work.

80.     Defendant Scott's male associates who did report to work were allowed to keep their positions despite their poor job performance.  Rather than evaluate them on their performance, Defendants Mays and Scott overlooked their incompetence and made excuses for their performance failures, often blaming Plaintiffs and/or other women who supervised or worked with them instead. As admitted in the April 2006 issue of The

Source magazine, "Benzino's 'boys' were omnipresent at The Source, some hired as staff members and some just loitering about the [marijuana] smoke filled corridors."

81.    By way of example only, the two male associates of Defendant Scott who were in Ms. Joyce's department, Messrs. Woods and Sam, would not arrive at work until well after noon each day, refused to attend her mandatory weekly staff meetings, and/or would routinely sleep at their desks during work hours.  No similarly-situated female employee was allowed to do the same.

82.    Ms. Joyce repeatedly complained about Messrs. Woods' and Sam's poor performance, all to no avail.  When she complained to her supervisors about their excessive lateness, Ms. Joyce was told that even though her female staff members and Ms. Joyce herself were required to be at work on a daily basis by no later than 9:30 a.m., Messrs. Woods and Sam could arrive several hours late each day because they were part of the "Boston Crew," Defendant Scott's group of male associates from Boston.  This was a blatant example of Gender discrimination.

83.    During one week, Mr. Woods even failed to show up at work for four days straight without contacting Ms. Joyce or anyone else at The Source, despite her directive that employees at least call the office if they were not going to be at work.  When Ms. Joyce complained to Defendant Mays about Mr. Woods' unauthorized absences, Defendant Mays made excuses for Mr. Woods and never subjected him to any disciplinary action.  Similarly-situated female employees were not allowed to engage in such conduct without being disciplined.

84.    A number of Defendant Scott's male associates were also allowed to smoke marijuana openly in the office on almost a daily basis and/or keep their positions

18

despite their poor job performance.  Rather than discipline these employees or even evaluate their performance, Defendants Mays and Scott consistently overlooked their actions and incompetence and made excuses for their performance failures, often unfairly blaming Plaintiffs and/or other women who supervised them instead.

85.    Ms. Joyce and other female employees were also discriminated against on the basis of their Gender with respect to compensation and other benefits.  For example, Ms. Joyce was paid less than her predecessor, Jeff Jones, even though she had additional responsibilities added to her position.  Upon information and belief, a number of male employees at The Source were also given leased cars paid for by The Source, whereas none of the female executives received a similar perquisite in connection with their employment.

86.    Defendants Scott and Mays also terminated or forced out of The Source without any basis many competent, dedicated, and hardworking female employees and/or executives and replaced them with men, including associates of Defendant Scott.

87.    They often fired women who disagreed with them or stood up to them, while male employees who did the same were often respected for having their own opinion and were not terminated.  Defendant Scott also made discriminatory gender-based statements in connection with his decisions to terminate the employment of female employees.  For example, when he terminated a senior female employee of the Accounting Department, Defendant Scott stated, in substance, "all she does is walk around here with her big ass and pillow talk with motherfuckers."

88.    Additionally, during Ms. Osorio's tenure as Editor-in-Chief, Defendants Mays and Scott sought to discriminatorily replace her with a male Editor-in-Chief solely

19

because she was a woman.  In fact, after Ms. Osorio had been serving as Editor-in-Chief

for only four or five months and while monthly sales of the magazine were increasing, a

male executive informed her that he had already been offered her position.  That

executive told Ms. Osorio that Messrs. Mays and Scott had told him that, as a woman,

she was too weak-minded and not strong enough for the position.  This was based solely

on her Gender, rather than any actual assessment of her performance.

89.     Defendant Scott also insulted Ms. Osorio repeatedly by telling her that he

"needed a man to do her job" or "a man's opinion" on various matters.  He even

threatened to take away her position by asking her whether he had to "bring in a man to

do this job, someone who understands these things," which was humiliating and

undermined her position and authority within the Company.

90.     Defendant Scott also repeatedly made offensive and derogatory remarks

about Ms. Osorio and other female executives, such as referring to them as the "Witches

of Eastwick," stating that there was "too much estrogen in the room" and that there were

problems with the magazine because there were "too many women" in charge of it.

Once, Defendant Scott even called a male employee into a meeting that he was having

with Ms. Osorio and several other women and stated, in substance, "I need a man in

here" and then solicited that employee's opinion on editorial ideas, stating that he needed

to hear "a man's opinion," which was offensive and discriminatory.

91.     At The Source, Ms. Osorio and other female employees were also denied

opportunities to perform duties given to men, such as when Mr. Scott told Ms. Osorio

that no woman at the Company could continue to participate in the selection of models

for the popular "Dimepiece" section of the magazine, which contains pictures of female entertainers or other women posing in scantily clad outfits.

92.     Although the "Dimepiece" models were always selected by both male and female staff during editorial meetings, Defendant Scott instructed Ms. Osorio to organize a closed-door meeting of only men, some of whom were not even part of the Editorial Department, to choose the models each month.  He stated that only men, and not women, could properly select the models for that section of the magazine.

93.     Ms. Osorio was also discriminatorily denied on the basis of her Gender an opportunity to participate in her capacity as Editor-in-Chief of The Source on a panel at the national conference on "Feminism and Hip Hop" held at the University of Chicago in April 2005, which addressed, among other things, the impact of hip hop music on sexual and gender issues.  Despite her commitment to participate as a featured panel speaker, the prominence of the event, and the fact that organizers of the event had already publicized her participation, Defendant Mays instructed Ms. Osorio to cancel her appearance, stating that The Source should not be involved in such a conference.

94.     Similarly, Defendant Scott forced Ms. Osorio to pull a story that she had planned on rape in the hip hop community, stating that it was not consistent with the vision of The Source and that Ms. Osorio should save those "women stories" for when Ms. Osorio worked at "a women's magazine."

95.     Defendants Scott and Mays also threatened to fire Ms. Osorio when she consistently opposed their efforts to use The Source magazine to smear prominent women in the rap music industry on the basis of their gender whom they hated or disliked, including popular radio personality Angie Martinez of *Hot 97*.  More

specifically, Defendant Mays directed that disparaging articles that contained outright fabrications be written about Ms. Martinez and other high-profile females that focused on the alleged sex lives of those women.  However, no such orders were made to publish similar disparaging stories on the alleged sexual activity of males in the rap music industry.

96.      In addition, Defendant Scott has made vulgar comments about women. By way of example only, he has referred to a female editor at another magazine as a "cracker bitch," "fucking slut monkey," "whore," transvestite" and "prostitute," as well as threatened her with physical violence and to spit in her face all because he disagreed with an article she had written.

**Defendants' Unlawful and Retaliatory Termination of Plaintiffs**

97.      As a result of the discrimination that she and other women at The Source were suffering in the workplace, Ms. Osorio filed numerous internal complaints, all to no avail.  She filed her last complaint on February 23, 2005 by sending an email to Julie Als, the head of Human Resources, stating that she had been discriminated against on the basis of her gender and demanding that such unlawful discrimination come to an end.

98.      Before sending that email, Ms. Osorio notified Ms. Als in advance that she wished to address an important issue with her formally and in writing.  Despite receiving advanced notice and Ms. Osorio's email on February 23, 2005, Ms. Als failed to take prompt remedial action in response to this complaint of discrimination.  In fact, she did not act on the email until almost two weeks later.

99.      On March 3, 2005, Ms. Als finally informed Defendants Mays and Scott about Ms. Osorio's complaint while they were away in the Dominican Republic shooting

a rap music video.  Defendants Mays and Scott then immediately began to unlawfully

retaliate against Ms. Osorio.  More specifically, when Defendant Scott spoke to

Ms. Osorio that same day, he repeatedly cursed at her and demanded that she rescind her

email complaint of harassment and discrimination.  Ms. Osorio, however, refused to do

so because her complaint was true.

100.    The next day Ms. Osorio received another telephone call from Defendant

Mays, who also uttered profanities at her and told her to retract the email complaint.

Despite the pressure put on her to withdraw her complaint, Ms. Osorio again refused to

do so.

101.    A few days later, on March 8, 2005, Defendant Mays called her again and

continued his efforts to intimidate her into withdrawing her email of February 23

complaining about discrimination.  Ms. Osorio again refused to take back her complaint.

Defendant Scott then grabbed the telephone from Defendant Mays and terminated Ms.

Osorio on the spot.

102.    Ms. Osorio's termination was based on her Gender and in unlawful

retaliation for her complaints about her discriminatory treatment at The Source.

103.    Moments after Ms. Osorio was terminated, Defendant Scott called the

high-ranking female executive whom he had subjected to constant acts of sexual

harassment and terminated her as well, without any basis.  He later terminated the

employment of Ms. Osorio's former female assistant for no apparent reason other than

she was female and worked as Ms. Osorio's assistant.

104.   Upon information and belief, these other female executives and/or employees were terminated as part of the same pattern and practice of disparate treatment on the basis of their Gender and retaliation that Plaintiffs suffered.

105.   Several months earlier in January 2005, Ms. Joyce was also terminated on the basis of her Gender and in unlawful retaliation for her complaints about the hostile work environment and the discrimination committed against women at The Source.

106.   As a result of the foregoing, Plaintiffs have suffered, and continue to suffer, economic loss, emotional distress, humiliation and damage to their reputation and careers.

**Defendants The Source and Scott Defamed Ms. Osorio in Retaliation For Her Discrimination Complaints**

107.   Following Ms. Osorio's unlawful termination, Defendant Scott, in his capacity as the Chief Brand Executive of The Source and claimed co-owner of the Company, granted an interview to AllHipHop.com, a hip hop music website.  During that interview, which was published in or about  March, 2005, Defendants The Source and Scott committed an additional act of unlawful retaliation against Ms. Osorio when Defendant Scott stated:

> . . . she made a complaint and we said like what is this based on.  We had a little conversation and we asked her that, you know, basically she tried to extort us to be like if you keep me on, I'll - if you promise not to fire me or get some time [sic] of contract, then I'll take the complaint away.

108.   Defendants The Source's and Scott's defamatory statement falsely and maliciously accused Ms. Osorio of having engaged in an attempted criminal extortion against Defendants The Source, Mays and Scott.

109.    Defendants The Source's and Scott's defamatory statement was intentional, willful and malicious and motivated to seriously harm Ms. Osorio's reputation and career and in retaliation for her complaints of discrimination.

110.    As a result of the publishing of this defamatory statement, Ms. Osorio has suffered serious harm to her reputation and career.

111.    Upon information and belief, Defendants Scott and Mays have made, and continue to make, these and similarly false and defamatory statements about Ms. Osorio to third parties.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Discrimination and Harassment in Violation of Title VII)

112.    Plaintiffs hereby repeat and re-allege each and every allegation in paragraphs 1 through 111, inclusive, as if fully set forth herein.

113.    Defendants Source Enterprises, Inc. and Source Entertainment, Inc. have discriminated against Plaintiffs on the basis of their sex, in violation of Title VII by denying to them the same terms and conditions of employment available to male executives and/or employees, including but not limited to, unlawfully terminating them, denying them the opportunity to work in an employment setting free of unlawful harassment, and denying them compensation, benefits and other perquisites equal to that of male employees.

114.    As a direct and proximate result of The Source's unlawful discriminatory conduct and harassment in violation of Title VII, Plaintiffs have suffered and continue to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which they are entitled to an award of monetary damages and other relief.

115.    As a direct and proximate result of The Source's unlawful discriminatory conduct and harassment in violation of Title VII, Plaintiffs have suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

116.    The Source's unlawful discriminatory actions and harassment constitute malicious, willful and wanton violations of Title VII for which Plaintiffs are entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Retaliation in Violation of Title VII)

117.    Plaintiffs hereby repeat and re-allege each and every allegation in paragraphs 1 through 116, inclusive, as if fully set forth herein.

118.    Defendants Source Enterprises, Inc. and Source Entertainment, Inc. have retaliated against Plaintiffs by, inter alia, reducing their job responsibilities, unlawfully terminating their employment and publishing a false and defamatory statement accusing Ms. Osorio of engaging in criminal activity, in violation of Title VII for their opposition to Defendants' discriminatory practices toward themselves and other female employees and/or their participation in lodging complaints about Defendants' discriminatory practices toward themselves and other female employees.

119.    As a direct and proximate result of The Source's unlawful retaliatory conduct in violation of Title VII, Plaintiffs have suffered, and continue to suffer, monetary and/or economic harm, including but not limited to, loss of past and future

26

income, compensation and benefits for which they are entitled to an award of monetary damages and other relief.

120.   As a direct and proximate result of The Source's unlawful retaliatory conduct in violation of Title VII, Plaintiffs have suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

121.   The Source's unlawful retaliatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiffs are entitled to an award of punitive damages.

### AS AND FOR A THIRD CAUSE OF ACTION

**(Discrimination and Harassment in Violation of
New York State Human Rights Law)**

122.   Plaintiffs hereby repeat and re-allege each and every allegation in paragraphs 1 through 121, inclusive, as if fully set forth herein.

123.   Defendants Source Enterprises, Inc., Source Entertainment, Inc., Mays and Scott have discriminated against Plaintiffs on the basis of their sex, in violation of the New York State Human Rights Law by denying them the same terms and conditions of employment available to male executives and/or employees, including but not limited to, unlawfully terminating them, denying them the opportunity to work in an employment setting free of unlawful harassment, and denying them compensation, benefits and other perquisites equal to that of male employees.

124.    As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York State Human Rights Law, Plaintiffs have suffered and continue to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which they are entitled to an award of monetary damages and other relief.

125.    As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York State Human Rights Law, Plaintiffs have suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Retaliation in Violation of New York State Human Rights Law)

126.    Plaintiffs hereby repeat and re-allege each and every allegation in paragraphs 1 through 125, inclusive, as if fully set forth herein.

127.    Defendants Source Enterprises, Inc., Source Entertainment, Inc., Mays and Scott have retaliated against Plaintiffs by, inter alia, reducing their job responsibilities, unlawfully terminating their employment and publishing false and defamatory statements accusing Ms. Osorio of engaging in criminal activity, in violation of the New York State Human Rights Law for their opposition to Defendants' discriminatory practices toward themselves and other female employees and/or their participation in lodging complaints about Defendants' discriminatory practices toward themselves and other female employees.

128.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiffs have suffered and continue to suffer monetary and/or economic harm, including but not limited to loss of past and future income, compensation and benefits for which they are entitled to an award of monetary damages and other relief.

129.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiffs have suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Aiding and Abetting Violations of New York State Human Rights Law)

130.    Plaintiffs hereby repeat and re-allege each and every allegation in paragraphs 1 through 129, inclusive, as if fully set forth herein.

131.    Defendants Mays and Scott knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and/or retaliation against Plaintiffs in violation of the New York State Human Rights Law.

132.    As a direct and proximate result, Plaintiffs have suffered and continue to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which they are entitled to an award of monetary damages and other relief.

133.    As a direct and proximate result, Plaintiffs have suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to

depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Discrimination and Harassment in Violation of
### New York City Human Rights Law)

134.    Plaintiffs hereby repeat and re-allege each and every allegation in paragraphs 1 through 133, inclusive, as if fully set forth herein.

135.    Defendants Source Enterprises, Inc., Source Entertainment, Inc., Mays and Scott have discriminated against Plaintiffs on the basis of their sex, in violation of the New York City Human Rights Law by denying them the same terms and conditions of employment available to male executives and/or employees, including but not limited to, unlawfully terminating them, denying them the opportunity to work in an employment setting free of unlawful harassment, and denying them compensation, benefits and other perquisites equal to that of male employees.

136.    As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, Plaintiffs have suffered and continue to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which they are entitled to an award of monetary damages and other relief.

137.    As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, Plaintiffs have suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

138.    Defendants' unlawful discriminatory actions and harassment constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiffs are entitled to an award of punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Retaliation in Violation of New York City Human Rights Law)

139.    Plaintiffs hereby repeat and re-allege each and every allegation in paragraphs 1 through 138, inclusive, as if fully set forth herein.

140.    Defendants Source Enterprises, Inc., Source Entertainment, Inc., Mays and Scott have retaliated against Plaintiffs by, inter alia, reducing their job responsibilities, unlawfully terminating their employment and publishing false and defamatory statements accusing Ms. Osorio of engaging in criminal activity, in violation of the New York City Human Rights Law for their opposition to Defendants' discriminatory practices toward themselves and other female employees and/or their participation in lodging complaints about Defendants' discriminatory practices toward themselves and other female employees.

141.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiffs have suffered and continue to suffer monetary and/or economic harm, including but not limited to loss of past and future income, compensation and benefits for which they are entitled to an award of monetary damages and other relief.

142.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiffs have suffered

and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

143.   Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiffs are entitled to an award of punitive damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Aiding and Abetting Violations of New York City Human Rights Law)

144.   Plaintiffs hereby repeat and re-allege each and every allegation in paragraphs 1 through 143, inclusive, as if fully set forth herein.

145.   Defendants Mays and Scott knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and/or retaliation against Plaintiffs in violation of the New York City Human Rights Law.

146.   As a direct and proximate result, Plaintiffs have suffered and continue to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which they are entitled to an award of damages.

147.   As a direct and proximate result, Plaintiffs have suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of damages.

148.   Defendants Mays' and Scott's unlawful actions constitute malicious,

willful and wanton violations of the New York City Human Rights Law for which

Plaintiffs are entitled to an award of punitive damages.

## AS AND FOR A NINTH CAUSE OF ACTION

### (Defamation And Slander Per Se)

149.    Plaintiffs hereby repeat and reallege each and every allegation in

paragraphs 1 through 148, inclusive, as if fully set forth herein.

150.    Defendants Source Enterprises, Inc., Source Entertainment, Inc. and Scott

either published, or caused to be published, a defamatory statement about Ms. Osorio.

151.    Specifically, this defamatory statement included a false assertion that Ms.

Osorio had engaged in criminal activity, specifically attempting to extort money from

Defendants Source Enterprises, Inc., Source Entertainment, Inc., Scott and Mays.

152.    Defendants Source Enterprises, Inc., Source Entertainment, Inc. and Scott

published said statement to the public through the AllHipHop.com website in or about

March 2005.

153.    Said statement was untrue and defamatory in that it falsely reported Ms.

Osorio's character, actions and statements, and Defendants Source Enterprises, Inc.,

Source Entertainment, Inc. and Scott knew or should have known that such statement was

false.

154.    Defendants Source Enterprises, Inc., Source Entertainment, Inc. and Scott

published said statement with malice.

155.    Defendants Source Enterprises, Inc., Source Entertainment, Inc. and Scott

published such statement with knowledge of their falsity and/or with a reckless disregard

for the truth or falsity of such statement.

156.   Said statement constitute defamation and/or slander <u>per</u> <u>se</u> because they impugn Plaintiff Osorio's honesty, trustworthiness, dependability, and professional fitness and abilities by falsely charging her with serious crimes and/or other conduct that would tend to injure Plaintiff in her trade or business.

157.   Said statement has caused Ms. Osorio embarrassment and emotional injury.

158.   Defendants Source Enterprises, Inc., Source Entertainment, Inc. and Scott are liable to Ms. Osorio for defamation.

159.   Defendants Source Enterprises, Inc., Source Entertainment, Inc. and Scott knew or should have known of the falsity of such statement made during the AllHipHop.com interview in or about March 2005.

160.   Upon information and belief, Defendants Scott and Mays have made, and continue to make, this and similarly false and defamatory statements about Ms. Osorio to third parties.

161.   As a result of said defamation, Ms. Osorio continues to suffer from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace and severe and extreme emotional distress.

162.   The acts of Defendants Source Enterprises, Inc., Source Entertainment, Inc. and Scott were intentional, willful, wanton, malicious and oppressive and were motivated solely by a desire to harm Ms. Osorio without regard for Ms. Osorio's well-being and were based on a lack of concern and ill-will towards Ms. Osorio and/or a deliberate or reckless disregard for her, for which Ms. Osorio is entitled to an award of punitive damages.

163.    By reason of the foregoing, Ms. Osorio has been damaged in an amount to be determined at trial but no less than five million dollars.

## AS AND FOR A TENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

164.    Plaintiffs hereby repeat and re-allege each and every allegation in paragraphs 1 through 163, inclusive, as if fully set forth herein.

165.    Defendants Source Enterprises, Inc., Source Entertainment, Inc., Mays and Scott engaged in conduct toward Plaintiffs that is extreme and outrageous so as to exceed the bounds of decency in a civilized society.

166.    Among other conduct, Defendants' pervasive pattern of harassment and discrimination, and tolerance and encouragement of the hostile and abusive treatment of Plaintiffs and other women at The Source, constitutes extreme and outrageous conduct that exceeds the bounds of decency in a civilized society.

167.    By their actions and conduct, Defendants intended to and did intentionally or recklessly cause Plaintiffs to suffer severe emotional distress.

168.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer severe emotional distress, for which they are entitled to an award of monetary damages and other relief.

169.    Defendants' extreme and outrageous conduct was knowing, malicious, willful and wanton, entitling Plaintiffs to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendants, containing the following relief:

A.      A declaratory judgment that the actions, conduct and practices of

Defendants complained of herein violate the laws of the United States, the State of New York, and the City of New York;

B.  An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.  An order directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

D.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

E.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including but not limited to, compensation for their mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

F.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for harm to their professional and personal reputations and loss of career fulfillment;

G.  An award of damages in an amount to be determined at trial, but no less than $5 million, to compensate Plaintiff Osorio for the defamation that Defendants Source Enterprises, Inc., Source Entertainment, Inc. and Scott

36

committed against her;

H.   An award of damages for any and all other monetary and/or non-monetary

losses suffered by Plaintiffs in an amount to be determined at trial, plus

prejudgment interest;

I.   An award of punitive damages;

J.   An award of costs that Plaintiffs have incurred in this action, as well as

Plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law;

and

K.   Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated

herein.


Dated: New York, New York
       March 31, 2006


Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By: _____
       Kenneth P. Thompson (KT-6026)
       Michelle M. le Roux (ML-2773)

350 Fifth Avenue, Suite 5720
New York, NY  10118
Telephone:  (212) 239-9292
Facsimile:  (212) 239-9001

COUNSEL FOR PLAINTIFFS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
KIMBERLY OSORIO and MICHELLE JOYCE,  :

                 Plaintiffs,  :

               v.  :      05 Civ. 10029 (JSR)(JCF)

SOURCE ENTERPRISES, INC.,  :
SOURCE ENTERTAINMENT, INC.,  :      **AFFIDAVIT OF SERVICE**
DAVID MAYS in his official and individual  :
capacities, and RAYMOND SCOTT, also known  :
as "BENZINO," in his official and individual  :
capacities,  :

             Defendants.  :
-------------------------------------------------------------X

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NEW YORK  )

      JILLIAN D. HOWELL, being duly sworn, deposes and says:

    1.     I am not a party to the action.

    2.     I am over 18 years of age.

    3.     I served the foregoing Amended Complaint on (i) Mercedes Colwin, Esq.,
Gordon & Rees, LLP, One Liberty Plaza, 23rd Fl., New York, NY 10006,
counsel for Defendant Source Enterprises, Inc., and (ii) Scott T. Baken,
Esq., Jackson Lewis, One North Broadway, 15th Fl., White Plains, NY
10601, counsel for Defendants David Mays and Raymond Scott, by
delivering a true copy thereof to said counsel by overnight delivery.

                                        _____
                                        Jillian D. Howell

Sworn to before me this
31st day of March, 2006

_____
Notary Public

MICHELLE MAY LE ROUX
Notary Public, State of New York
No. 02LE6082532
Qualified in New York County
Commission Expires October 28, 2006